UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

                                                      Case No. 8-19-71413-reg

Anelia Tcherneva aka
Anelia Tchernev,

                                                      Chapter 13
                              Debtor.
-----------------------------------------------------------------x

## MEMORANDUM OPINION

This matter is before the Court pursuant to an application ("Application") for

compensation filed by the law firm of Lester Kornman Kamran & Masini, P.C. ("Counsel"),

which represents Anelia Tcherneva aka Anelia Tchernev ("Debtor") in this confirmed Chapter

13 case. Counsel filed the Application seeking $9,165.00 in attorney's fees for services rendered

pre-confirmation, incurred almost exclusively as the result of the Debtor's desire to restructure a

residential mortgage with her lender. In furtherance of that goal, the Debtor sought, and the

Court granted, an order directing the parties to participate in a process known as loss mitigation.

Counsel acknowledges they routinely charge clients a flat fee of $5,500.00 for Chapter 13 cases

and charge additional fees for certain services. In this case, Counsel seeks compensation in

addition to the flat fee of $5,500.00. Counsel argues the Court should find that the work

performed in connection with loss mitigation in this case is not work performed in the ordinary

course of a Chapter 13 case and therefore should not be included in the flat fee.

This case presents the Court with several challenges. While the legal issues raised in the

Application are not complex and the Bankruptcy Code sections under which fees are awarded to

counsel for Chapter 13 debtors are relatively clear, the Application highlights significant issues

that this Court has not previously been asked to decide. Why these issues have not been brought

to the Court's attention earlier is a question the Court has for Michael Macco, the Chapter 13

Trustee ("Trustee") and the United States Trustee, but that is for a later date. By way of

background, the Court recognizes that much of the work involved in the administration of the

Chapter 13 cases is done by the Trustee and other professionals. This Court has written

extensively on the challenges of the statute. This Court has on numerous occasions

acknowledged the fine work of the Trustee, and many debtors owe their success to his efforts.

However, what has developed is a process that has gone astray and we must recognize this fact.

It appears that a de facto "no-look" fee agreement has been implemented between

professionals and the Trustee. If the fees sought by counsel to a Chapter 13 debtor exceed an

amount the Trustee believes is fair and reasonable, the Trustee directs the attorney to file a fee

application. However, if the Trustee and counsel agree on a fee, it is incorporated in a plan and

the Trustee then recommends confirmation. While it can be argued the Court, while not

conducting a specific hearing, is nonetheless ruling on the requested fees, this was never the

intent of the statute and is a process that will cease. The argument for allowing such a procedure

is the desire to streamline the confirmation process and reduce costs which is beneficial to the

debtor and the creditors. However, the awarding of fees is the sole responsibility of the Court,

and because of this fact, the Court will be formally implementing a process to satisfy this

requirement and at the same time to continue to meet the Trustee's objective to limit costs. This

Court will draft new rules which give counsel to Chapter 13 debtors the option of either

proceeding under what we designate a "presumptively reasonable fee" which will allow the

Court to award fees without the need for a hearing or filing a fee application. If counsel seeks

fees beyond the stated presumptive fee, the request will be reviewed at the time of confirmation.

This is explained in more detail herein.

The Court intends to adopt procedures that establish a presumptive fee of $5,500.00. It appears that this is the basic fee currently charged in our District. If there is support for establishing a different presumptive fee the Court will remain open to those arguments. Attorneys that seek a fee of $5,500.00 and submit an affirmation that the work done in the case at the attorney's hourly rate is equal to or less than $5,500.00, the fee will be presumed to be reasonable. Unless directed by the Court, attorneys seeking the presumptive fee will not be required to have a hearing. Attorneys may choose to forego this arrangement and file a fee application for any amount they wish to request and will be required to have a hearing which the Court will conduct under 11 U.S.C. § 330 and 11 U.S.C. § 1325 at the time of confirmation. Only the Court awards fees; no modification of this process will be permitted.

The Court will no longer entertain motions for loss mitigation in Chapter 7 or 13 cases. After a careful review of the history, function, and practices of the loss mitigation program as it is currently practiced, the Court has concluded that the program should cease. Loss mitigation is an administrative process that was needed by debtors and lenders when the mortgage industry itself was in collapse and it was difficult for debtors to identify the party that held the mortgage. The process was born out of necessity and implemented by bankruptcy courts all over the country. Many families kept their homes because the courts recognized a problem and provided a solution. However, it was never intended to become a de facto right or a new form of bankruptcy protection. Today, loss mitigation has morphed into an institutionalized process not supported by the Bankruptcy Code. It now seemingly exists not for the purpose originally intended but rather for the benefit of professionals, trustees, and institutions, often to the economic detriment of the creditors. This is the antithesis of what Chapter 13 was designed to do. The Court will always encourage Chapter 13 debtors and their secured creditors to reach a consensual arrangement,

including mortgage modifications, but this should be, as it always has been, on a voluntary basis between the parties. To be clear, "non-traditional" Chapter 13 cases which are filed solely to participate in the loss mitigation process will be subject to swift motions to dismiss as required by statute. Chapter 13 cases are difficult and many fail. This Court is not intending to punish debtors or counsel who in good faith try and fail in this process. However, the essential point is each case must be filed in good faith.

The Application is granted for the full amount notwithstanding the newly implemented policies. The Court recognizes that this is a confirmed case and Counsel incurred these fees before the Court reexamined its policies. For these reasons, and as more fully set forth below, the Court finds that the fees requested by Counsel are reasonable under 11 U.S.C. § 330.

### Procedural History

On February 27, 2019, Debtor filed her petition along with the signed retainer agreement ("Retainer") which provides that for $3,000.00, plus an administrative fee of $2,500.00, and the $310.00 chapter 13 filing fee (for a total of $5,810.00), Counsel would provide certain enumerated services.[1] For an additional charge, Counsel would provide additional services not covered by the $5,810.00 amount.[2]

---

[1] Those services are the preparation and filing of a Chapter 13 petition, related required filings and plan of reorganization for the Debtor, stopping wage garnishment, providing representation at the initial 341 meeting and any adjournment not caused by Debtor's failure to appear or provide documentation, preparation and filing of any amended plans, representation at the confirmation hearing and any adjournment not caused by Debtor's failure to appear, provide documentation, or be current with payments to the Trustee or any creditor. ECF No. 3.

[2] Additional services include: attending an adjourned 341 or confirmation hearing caused by Debtor, defense of a motion to dismiss or a lift-stay motion due to Debtor's failure to pay mortgage payments, amending schedules to include information the Debtor failed to tell the law firm or failed to accurately disclose, preparation of motions and affidavits in support of the plan, objections to claim, motions to expunge a claim, motions to avoid liens, cramdown motions, contempt motions, and motions to recover an asset. ECF No. 3.

On April 9, 2019, Debtor filed her first Chapter 13 plan which indicated she would be requesting loss mitigation pursuant to the Court's loss mitigation procedures and that unsecured creditors would receive a distribution of not less than two (2) percent. Debtor filed her first motion to enter loss mitigation with respect to the first mortgage on her residence on April 11, 2019, but it was withdrawn the following day.

On April 12, 2019, Debtor filed a second motion to enter loss mitigation seeking to modify the first mortgage on her residence. ECF No. 24. The Court granted the second motion on September 6, 2019. ECF No. 33. That same day Debtor submitted a completed loan modification package to the lender, Fifth Third Bank ("the Bank"). ECF No. 37.

On September 10, 2019, the Court entered an order granting Debtor's motion pursuant to 11 U.S.C. §§ 506 and 1325 to deem the junior mortgage on Debtor's residence unsecured. On February 7, 2020, the Bank reported that Debtor's loan modification application was denied for reasons related to the stripping of the junior mortgage. These issues required an exception review by Freddie Mac and an updated loss mitigation package. ECF No. 42. As a result, Debtor was back at square one six months into the loss mitigation process.

On April 9, 2020, the Bank reported to the Court that Debtor was granted a six (6) month forbearance due to the COVID-19 pandemic. ECF No. 46. In October 2020, the Bank informed Counsel that a new package was required, along with a completed Uniform Borrower Assistance Form. In November of 2020, Debtor submitted another loss mitigation package at the direction of the Bank while the Bank, unbeknownst to either Debtor's counsel or the Bank's counsel, issued a trial modification without the Freddie Mac exception review or extra form, and sent it directly to Debtor's residence. The trial modification scheduled payments for December 2020, January 2021, and February 2021, which the Debtor completed.

On April 29, 2021, Counsel informed the Court that Debtor was still waiting for the final modification documents from the Bank and had followed up on March 23, April 21, and April 26, 2021. Debtor received the final modification documents in June 2021, which Debtor promptly signed and returned. A month later, the Bank signed and returned the fully executed modification documents. The Court entered an order approving the loan modification on August 3, 2021. An order was entered confirming Debtor's plan on August 12, 2021, one month after the expiration of her car lease. As a result, Debtor's counsel was required to bring an emergency motion to obtain funding for a new vehicle rather than simply obtaining financing approval by letter from the Trustee. In this time, Debtor's counsel made eleven (11) loss mitigation appearances, four (4) in-person and seven (7) telephonic.

On August 17, 2021, Debtor's counsel filed the Application. ECF No. 88. The Trustee filed a partial opposition ("Opposition") arguing that Counsel had agreed to represent Debtor for a fee of $5,500.00 plus the filing fee pursuant to the Disclosure of Compensation. ECF No. 91. The Trustee did not find anything in Counsel's time records demonstrating that the work performed was extraordinary or not contemplated under the original fee agreement between Debtor's counsel and Debtor. *Id.* Counsel filed a reply arguing that the Retainer set forth the services covered by the $5,500.00 fee and separately identified each specific, non-standard service which was not covered by the Retainer. ECF No. 93. The Retainer clearly states that loss mitigation is not included in the $5,500.00 fee. At the hearing on the Application, Counsel stated that the plan provided for payment of the attorney's fees from funds left over after payment of a lump sum to the Bank. Those funds were collected and held by the Trustee as proposed mortgage payments pending a final loan modification.

## Discussion

The Application itself raises a relatively straightforward issue: should counsel to Chapter 13 debtors be permitted to seek compensation for services related to loss mitigation or should these services be included in the base fee commonly charged in this District? In this case, the plan has been confirmed and the plan itself provides for the payment of these additional fees, if awarded by the Court, from the funds currently held by the Trustee. The Application, arguments, and submissions to the Court have caused the Court to reconsider certain of its practices in Chapter 13 cases. While this decision addresses the Application, the Court will first review the current practice for compensating counsel to Chapter 13 debtors and the Bankruptcy Code requirements for awarding fees to counsel to Chapter 13 debtors. After ruling on the Application, the Court will set forth procedures, which will be implemented shortly, for awarding such fees on a prospective basis. The Court will also explain its rationale for terminating the loss mitigation procedures set forth in its Chambers Rules.

### I.    Applications for Compensation

Attorneys in this District representing Chapter 13 debtors have adopted a practice of charging debtors $3,000.00 prior to commencement of the case and charging an additional $2,500.00 upon confirmation which is reflected in the confirmed plan. This $2,500.00 fee is paid out over the life of the plan. There is no substantive Court oversight over the award of the fees up to $5,500.00 as the order of confirmation merely includes this as a matter of course. If additional work is performed post-confirmation, counsel will request additional fees in any motion seeking the post-confirmation relief. The Court does not have a procedure for so-called presumptively reasonable or no-look fees. Rather, it is left up to the Trustee to police the attorneys and determine whether a fee application is required. In most Chapter 13 cases, no fee application is

filed and the bar accepts whatever the Trustee recommends. In this case, Counsel seeks an award in excess of $5,500.00 based on the additional work undertaken in connection with loss mitigation. Because the plan has been confirmed and the Trustee is holding funds sufficient to pay the fees as requested, there is no need in this case to consider the effect this award has on the creditors.

In cases where the plan is not confirmed, the Bankruptcy Code requires the Court to utilize a two-part analysis. First, the Court must determine the reasonableness of the requested fee pursuant to 11. U.S.C. § 330. Second, the Court must analyze the debtor's proposed plan, taking into consideration the allowed amount of fees. The Court must ascertain whether an award of fees as requested would render the plan unfeasible or would deem the plan as not proposed in good faith.

This tension between ensuring that a confirmed plan can be effectuated and the need to pay all administrative claims before unsecured creditors are paid is quite common in Chapter 11 cases. Often, professionals are faced with reducing their fees to facilitate a confirmable Chapter 11 plan. Because professional fees in Chapter 13 cases have historically been relatively low in proportion to proposed distributions, this issue has largely been avoided. However, in recent years this tension has come to the forefront. In this case, Counsel points to the work necessitated to comply with the Court's loss mitigation procedures along with a certain degree of ineptitude on the part of the Bank and its professionals. While the plan has been confirmed in this case, the additional fees requested highlights what takes place in many other Chapter 13 cases in this District.

It is crucial to understanding the Court's reasoning herein to recognize a simple but fundamental aspect of Chapter 13: the debtor commits all disposable income to paying creditors

for generally a five (5) year term. Therefore, any funds going to administrative expenses are deducted from money that would otherwise go to creditors. Chapter 13 was created to require debtors to make some payment to their creditors in return for keeping ownership of property, generally the family residence. Congress recognized the critical role of professionals and provided for their priority payment. However, balancing those objectives is the responsibility of the Court, not the Trustee.

### A.  11 U.S.C. § 330

The Court is responsible for determining whether the fees requested are reasonable under 11 U.S.C. § 330. A professional requesting approval of fees and expenses bears the burden to prove that the fees and expenses requested are reasonable. *Continental Ill. Nat'l Bank & Trust v. Charles N. Wooten, Ltd. (In re Evangeline Refin. Co.)*, 890 F.2d 1312, 1326 (5th Cir. 1989); *see also In re King*, 546 B.R. 682, 711 (Bankr. S.D. Tex. 2016) ("[F]or any fees requested under § 330(a), '[t]he applicant bears the burden of proof in a fee application case.'"). "This burden is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by [the] debtor." *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987).

Section 330(a)(1)(A) of the Bankruptcy Code states that a court may award "reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person . . . ." To determine the amount of reasonable compensation, § 330(a)(3) directs courts to consider the nature, extent, and value of the services and taking into account several factors, including: (1) the time spent on the services; (2) the rates charged; (3) the necessity of the services to the administration of the case; (4) the benefit of the services towards completion of

the case; (5) the reasonableness of the time spent compared to the complexity, importance, and

nature of the problem, issue, or task; (6) board certification of the professional or other

demonstrated skill and experience in bankruptcy; and (7) the reasonableness of the compensation

based on the customary compensation charged by comparably skilled practitioners.

Section 330(a)(4)(B) permits courts to exercise discretion in awarding compensation for

services rendered which benefitted and were necessary for the debtor in Chapter 12 and 13 cases.

This is an exception to the rule that services are compensable only if the work benefits the estate.

*In re Steen*, 631 B.R. 704, 709 (Bankr. N.D. Tex. 2021). In adding § 330(a)(4)(B) in 1994,

Congress recognized that services beneficial to the debtor can facilitate successful *completion* of

the plan because the debtor must fund a Chapter 13 plan and success on an issue in the case can

determine whether a debtor can continue in Chapter 13. *See id.* at 708–09 (citing *In re Williams*,

378 B.R. 811, 823 (Bankr. E.D. Mich. 2007)); *see also* 5 *Collier on Bankruptcy*

¶ 330.04[1][b][v] (16th ed.); 3 *Collier on Bankruptcy* ¶ 330.03[1][b][v] (16th ed.). Importantly, a

successful Chapter 13 case is one where a plan is completed. A Chapter 13 case is not successful

where it ends at any earlier stage. *See In re Pappas & Rose, P.C.*, 229 B.R. 815, 819 (W.D. Okla.

1998) ("Failure of a Chapter 13 plan is not reasonably likely to benefit the estate."). In *Williams*,

the court first determined whether the services were beneficial to the estate, and if not, then

determined whether the serves were reasonably likely to benefit the debtor. *Williams*, 378 B.R. at

826. Counsel should determine the impact of the services and the cost of those services upon the

debtor and the plan at the time the services are rendered. *Id.*

Courts typically apply the "lodestar" method in calculating the reasonableness of

attorney's fees under § 330. *In re Korean Chosun Daily Times, Inc.*, 337 B.R. 758, 766 (Bankr.

E.D.N.Y. 2005) (Stong, J.) (holding that the lodestar method is to be used to determine

reasonable attorney's fees in all federal courts, including bankruptcy courts); *In re Hanover*, No. 8-20-70676-ast, 2020 WL 2554229, at *3 (Bankr. E.D.N.Y. May 19, 2020); *Jackson v. Reed Smith LLP (In re Jackson)*, 630 B.R. 700, 728 (Bankr. D. Conn. 2021). The lodestar method requires multiplying the number of hours reasonably expended by an hourly rate based on the prevailing market rate for attorneys of comparable skill and standing in the relevant legal community. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 190 (2d Cir. 2000). As discussed later, many bankruptcy courts employ "presumptively reasonable fees" in Chapter 13 cases which presume that a set amount of attorney's fees are reasonable for the work performed. Courts which employ presumptive fees do not regularly review fee applications which fall below the set amount. To date, the Court has not adopted a "presumptively reasonable" fee amount for Chapter 13 cases.

If the Court determines that the fees are reasonable under § 330, it must then determine whether the fees are reasonable in the scheme of the proposed Chapter 13 plan.

### B.  Confirmability

An award of fees to debtor's counsel cannot be divorced from the Chapter 13 plan process. The amount of allowed administrative claims in a Chapter 13 proceeding is a critical component in analyzing whether a debtor's proposed plan is fair and reasonable and confirmable. Professional fees usually represent the bulk of these administrative claims. Courts cannot forget that the work undertaken by professionals is done in the context of a Chapter 13 case and an unconfirmed case is a failed case. Awarding excessive attorney's fees outside the context of plan confirmation leads to results estranged from the Bankruptcy Code. For example, courts have awarded tens of thousands of dollars attorney's fees based on the reasoning that the attorney performed the work and achieved a desired result for the benefit of the Chapter 13 debtor. While

that may be true, courts must be mindful that the purpose of Chapter 13 is to confirm a plan and then abide by its terms. Excessive attorney's fees should not be awarded where such award contravenes the purposes of Chapter 13.

At confirmation, the Court must independently evaluate the plan utilizing the standards set forth in 11 U.S.C. § 1325(a) and may deny confirmation if a plan does not comply with those requirements.[3] After confirmation, at the end of the plan term, if the debtor has successfully complied with the terms of the plan, the debtor is discharged of his or her personal liability on the remaining debts. Of the requirements of § 1325(a), feasibility and good faith are particularly important.

### i.    Good Faith

Under § 1325(a)(3), a Chapter 13 plan must be proposed in good faith. While the Bankruptcy Code does not define "good faith," the Second Circuit has found that to ascertain whether a plan was proposed in good faith, a bankruptcy court must determine "whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner." *Johnson v. Vanguard Holding Corp. (In re Johnson)*, 708 F.2d 865, 868 (2d Cir. 1983) (quoting *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1389–91 (9th Cir. 1982)). Bankruptcy courts also consider whether, "under the 'totality of the circumstances,' the debtor has abused the provisions, purposes, and/or spirit of Chapter 13." *Plagakis v. Gelberg (In re Plagakis)*, No. 03 CV 0728(SJ), 2004 WL 203090, at *4 (E.D.N.Y. Jan. 27, 2004). It is not enough for a debtor to technically comply with

---

[3] By contrast, in a Chapter 11 case, debtors propose a plan of reorganization (which has similar aims to a Chapter 13 plan) or a plan of liquidation (similar to the purposes of Chapter 7). Creditors may vote to reject a plan wherever they believe the plan is not feasible. Although both Chapter 11 and Chapter 13 provide mechanisms for creditors to voice dissent to proposed plans, Chapter 11 specifically requires the assent of creditors whereas Chapter 13 does not. As a result, the Court plays a larger role when determining whether to confirm a Chapter 13 plan.

the Bankruptcy Code. *In re Renz*, 476 B.R. 382, 390 (Bankr. E.D.N.Y. 2012) (Craig, J.). The debtor must also show that he or she has chosen Chapter 13 "with the purpose of accomplishing the aims and objections of bankruptcy . . . ." *Id.* (quoting *In re Klevorn*, 181 B.R. 8, 10 (Bankr. N.D.N.Y. 1995)).

Several courts have denied confirmation of Chapter 13 plans as not proposed in good faith where attorney's fees paid through a Chapter 13 plan exceeded the amount paid to unsecured creditors. *See, e.g.*, *In re Paley,* 390 B.R. 53, 58–60 (Bankr. N.D.N.Y. 2008); *Ingram v. Burchard*, 482 B.R. 319 (N.D. Cal. 2012); *In re Arlen*, 461 B.R. 550 (Bankr. W.D. Mo. 2011). These kinds of plans, according to those courts, are an abuse of the provisions, purpose, and spirit of the Bankruptcy Code. *See Paley*, 390 B.R. at 58–60. They leave the vast majority of debts unpaid and may be vulnerable to abuse by attorneys seeking to advance their own interests ahead of debtors. *Berliner v. Pappalardo (In re Puffer)*, 674 F.3d 78, 83 (1st Cir. 2012). They are essentially Chapter 7 cases disguised as Chapter 13 cases. *See Paley*, 390 B.R. at 58–60; *In re Brown*, 742 F.3d 1309, 1317–18 (11th Cir. 2014).

However, such plans are not necessarily *per se* in bad faith. There may be the rare case where, considering the totality of the circumstances, it is appropriate to confirm a plan that pays attorneys more than unsecured creditors, but the burden to demonstrate that this kind of plan is justified is heavy. *In re Puffer*, 674 F.3d at 83. Conversely, there may be cases where unsecured creditors are paid more than the attorney's fees but the structure of the plan and the circumstances surrounding the plan weigh against finding good faith.

### ii.    Feasibility

Under § 1325(a)(6), a Chapter 13 plan must be feasible. That is, the debtor must "be able to make all payments under the plan and comply with the plan." This includes payments for both

administrative expenses and unsecured claims. Debtor's attorney's fees are administrative expenses under § 503(b) which may be paid before or contemporaneously with other creditors under § 1326(b)(1). Where payments of attorney's fees pursuant to § 1326 interfere with the feasibility of the plan, such plans should not be confirmed. *See Shorb v. Bishop (In re Shorb)*, 101 B.R. 185, 187 (B.A.P. 9th Cir. 1989). Courts have noted circumstances where attorney's fees are paid ahead of creditors while collateral decreases in value and, in some instances, the case is dismissed before payments are ever made to creditors. *See In re Tenney*, 63 B.R. 110, 11 (Bankr. W.D. Okla. 1986); *In re Lanigan*, 101 B.R. 530, 533 (Bankr. N.D. Ill. 1986). In those cases, "[w]here plan payments are small and payment of fees out front will delay payments to creditors for many months," there's "no reason . . . why the attorneys who present thinly funded plans should not share in the risk of possible failure thereof and thereby be encouraged to scrutinize all plans even more closely." *Lanigan*, 101 B.R. at 533.

Even where debtor's counsel files a fee application, courts must still evaluate the fee application against the Chapter 13 plan. A fee application may still be denied where the fees requested are in excess of the amounts to be paid to unsecured creditors or are otherwise inequitable compared to the plan provisions for creditors.

## II.    The Application

This case has already been confirmed and no analysis of the fee application against the confirmability of the Chapter 13 plan is required. Accordingly, the Application will be analyzed against the factors set out in 11 U.S.C. § 330.

Debtor's confirmed plan states that "[t]he balance of the fees owed to the attorney for the debtor(s) is $12,000." Counsel's fee application requests payment of $9,165.00 in fees.[4] Counsel submits that the bulk of the $9,165 in fees were incurred due to the Bank's conduct during the loan modification process. Debtor filed a motion for loss mitigation on April 12, 2019, ECF No. 24. On September 6, 2019, the Court granted the motion. Over the course of over two years, Debtor's counsel attended eleven (11) loss mitigation hearings, in person and telephonically, and submitted two (2) loss mitigation applications.

Debtor's first loan modification application was erroneously denied when the Bank believed the second mortgagee was required to subordinate its lien despite the entry of an order avoiding the second mortgagee's lien. After Debtor's trial loan modification was completed in February 2021, it took an additional four months for Debtor to receive the final loan modification documents and another month for the Bank to sign and return the fully executed documents. Debtor's plan was unable to be confirmed until August 2021 as a result of delays caused by the Bank. The delay also required Debtor's counsel to bring an emergency motion to obtain funding for a new vehicle for Debtor as Debtor's vehicle lease expired the month prior.

Based on the Court's own loss mitigation procedures which apply to this case and the terms of the confirmed plan, Debtor's counsel's fee request is reasonable under § 330 and reflects adherence to those procedures. The Court sees no reason to reduce the fee request and it shall be granted in full.

---

[4] The Court has already approved the disbursement of $2,500 in attorney's fees from the Trustee which constituted the balance of Counsel's base legal fee pursuant to the retainer agreement between Debtor and Counsel. ECF No. 99.

### III.    Presumptive Fees

Having ruled on the Application, the Court turns now to the fee award process in Chapter 13 cases on a prospective basis. The issue before the Court with respect to presumptive fees is whether that fee can be absorbed in a plan so that it is confirmable provided there are no other impediments to confirmation. In this Court's view, adopting a presumptive fee does not eliminate the Court's obligations set forth by statute. Rather, it permits the parties to have comfort that the Court will generally not reject a plan otherwise confirmable if the allowed fees are not greater than the presumptive fee.

Presumptively reasonable fees are amounts set by bankruptcy courts which the court expects is sufficient to fairly compensate a skilled attorney in providing routine services in a typical Chapter 13 case. *In re Wesseldine*, 434 B.R. 31, 37 (Bankr. N.D.N.Y. 2010). Presumptively reasonable fees assume that most Chapter 13 cases share common elements, for example, involving secured debt on homes and vehicles, debtors facing home foreclosure, or owing taxes to state, federal, and local governments. *See id.* at 38.

Courts that use presumptively reasonable fees believe they are a method for streamlining Chapter 13 cases for the court and for counsel. According to those courts, presumptively reasonable fees do not do away with the requirements of 11 U.S.C. § 330 nor do they eliminate the court's responsibility to review the reasonableness of attorney's fees. *In re Beale*, 553 B.R. 69, 80 (Bankr. E.D Va. 2016); *In re Debtor's Attorney Fees in Chapter 13 Cases*, 374 B.R. 903, 908–09 (Bankr. M.D. Fla. 2007); *Sikes v. Crager (In re Crager)*, 691 F.3d 671 (5th Cir. 2012). The specific circumstances of a case may cause a court to order an itemized fee application and to perhaps reduce the amount of attorney's fees to be awarded. *Beale*, 554 B.R. at 81. For example, attorneys who routinely charge the maximum flat fee allowed regardless of the

16

complexities of each case and provide the bare minimum of services required by Chapter 13 cases run afoul of their ethical obligations and may find their fees disgorged. *See Wesseldine*, 434 B.R. at 39. A court may also suspend presumptively reasonable fees as to a particular attorney if circumstances warrant as part of its duty to review compensation for reasonableness under 11 U.S.C. § 330. *Beale*, 554 B.R. at 81.

The utility of presumptively reasonable fees is persuasive and this Court will formally implement a procedure to allow presumptively reasonable fees. The Court will not require a hearing for fees at or below $5,500.00 in Chapter 13 cases if an attorney opts into this arrangement and affirms that the services performed and the time spent performing those services are commensurate with the fee requested. That is, the Court will presume that upon the attorney's affirmation of the work done, fees that are less than or equal to $5,500.00 as of the hearing on confirmation of the Chapter 13 plan are reasonable. Attorneys may choose to forego this arrangement and file a fee application for any amount of fees which the Court will review under 11 U.S.C. § 330 and 11 U.S.C. § 1325 at the time of confirmation. This procedure properly vests the duty to review attorney's fees with the Court. The Court may request a full fee application, including detailed time records, and conduct a full analysis of the fee application even where an attorney has chosen to accept a presumptively reasonable fee.

**IV.    Loss Mitigation**

What makes Chapter 13 particularly enticing to even those who could qualify for the more straight-forward Chapter 7 bankruptcy is the prospect of saving the family home. Where in a Chapter 7 case the trustee is vested with the power to sell the debtor's residence and use the proceeds to pay creditors, in a Chapter 13, the debtor has the power to delay full repayment of mortgage arrears for up to 60 months and reinstate the mortgage by continuing to make post-

petition mortgage payments, resulting in the debtor being allowed to remain in the home. Over the past decade, due to the fallout from the mortgage crisis and problems uncovered in the mortgage lending process, debtors sought home mortgage restructurings. Upon a successful restructuring, the debtor would file a motion to approve a loan modification with the Bankruptcy Court which the Court may approve by order. This was a formal process undertaken on a case-by-case basis between borrower and lender. The Court's only role into the process was approval of the loan modification. Because of the collapse of many institutions in the early part of this century it was difficult for debtors to communicate with anyone of authority to negotiate a modification. To facilitate this many bankruptcy courts instituted procedures to assist debtors. This was always a temporary administrative solution. There is nothing in the Code which permits a bankruptcy court to forcibly restructure a residential mortgage.

In 2009, certain judges in this District adopted loss mitigation procedures in response to the 2008 housing crisis.[5] Gen. Order No. 676 (amending general orders nos. 543 and 582). The purpose was to "facilitate[ing] consensual resolutions for individual debtors whose real property is at risk of loss to foreclosure." *Id.* While the aim of the loss mitigation program is noble, the circumstances that led to its implementation are now absent. Last year, total bankruptcy filings fell twenty-four (24) percent from the previous year with a twenty-four (24) percent decrease in

---

[5] Several other bankruptcy courts similarly adopted loss mitigation procedures in the wake of the 2008 housing crisis. *See In re Sosa*, 443 B.R. 263, 265 (Bankr. D.R.I. 2011) for a discussion of the impetus for establishing loss mitigation procedures in the Rhode Island bankruptcy court and other courts. Under this Court's loss mitigation procedures, debtors must file and serve a motion requesting the Court to direct the debtor and creditor into loss mitigation. During loss mitigation, a creditor may contact the debtor directly and may not file a lift-stay motion except where necessary to prevent irreparable injury. The time to object to confirmation is extended to a date fourteen (14) days following the loss mitigation period. The loss mitigation period is set by the bankruptcy court in the loss mitigation order. The period can be extended by agreement of the parties or by filing a request with the court. Loss mitigation can be terminated before the period ends on request of a party to loss mitigation. A case cannot be dismissed during the loss mitigation period except upon motion of the Chapter 13 trustee or U.S. Trustee or the voluntary request of the debtor. A resolution or settlement reached during loss mitigation is subject to court approval.

consumer filings, due to government relief programs, moratoriums, lender deferments, and low interest rates. *Total Bankruptcy Filings Drop 24 Percent in Calendar Year 2021, Commercial Chapter 11s Down 48 Percent*, Am. Bankr. Inst. (Jan. 7, 2022), https://www.abi.org/newsroom/press-releases/total-bankruptcy-filings-drop-24-percent-in-calendar-year-2021-commercial. In grappling with the effects of an unprecedented pandemic, Congress passed legislation which addressed mortgage defaults and evictions by providing relief for those falling behind on mortgages and rent as the result of COVID-19. Congress could have added court-ordered loss mitigation to the Bankruptcy Code, but it did not.

The onslaught of foreclosures and bankruptcy filings that necessitated a broad program directing mortgage lenders to the table to negotiate modifications with debtors has abated. Slowly, Chapter 13 has morphed into the pursuit of loss mitigation as its sole purpose in which debtors file cases they never intend to bring to confirmation. These cases are dismissed prior to confirmation, and if they do reach confirmation, the debtors make initial plan payments which repay attorney's fees and then payments stop, leading to unopposed dismissals. Meanwhile, attorneys exclude loss mitigation services from their retainer agreements and rack up additional fees beyond the initial retainer amount and expect these fees get paid out of the plan or other funds held by the Chapter 13 trustee. Attorneys for the mortgagees benefit regardless of whether loss mitigation is successful because they are also getting paid their attorney's fees for simply being a part of the process. The result is that unsecured creditors essentially pay for debtors to retain counsel for loss mitigation without getting paid themselves. This violates the purposes of Chapter 13.

Additionally, the Court has no legal authority under the Bankruptcy Code to enforce the loss mitigation program. Courts have justified these programs by finding they have an inherent

power to manage their dockets under 11 U.S.C. § 105(a) which authorizes courts to implement orders or rules. *See, e.g.*, Hon. Cecelia G. Morris and Mary K Guccion, *The Loss Mitigation Program Procedures for the United States Bankruptcy Court for the Southern District of New York*, 19 Am. Bankr. Inst. L. Rev. 1 (2011). However, the Court finds no authority in § 105(a) or elsewhere to establish a loss mitigation program as it is currently used by debtors. The Court will not read into § 105(a) rights or powers which do not exist in the bankruptcy code. *See U.S. v. Farrell (In re Farrell)*, 241 B.R. 348, 349 (Bankr. M.D. Pa. 1999); *Martelloni v. Martelloni (In re Martelloni)*, No. 12-75072-ast, Adv No. 12-8437-ast, 2013 WL 5873264, at *6 (Bankr. E.D.N.Y. Oct. 31, 2013) (Trust, J.); *In re Barney's, Inc.*, 197 B.R. 431, 438 (Bankr. S.D.N.Y. 1996) "Section 105(a) is not a license to judicially legislate perceived shortcomings in existing law," *Farrell*, 241 B.R. at 349, nor does it "constitute a roving commission to do equity," *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 92 (2d Cir. 2003) (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)).

The Court views the loss mitigation program to be akin to court-ordered mediation, which the Court grants sparingly and only on consent of the parties. Parties may continue to submit motions for approval of loan modifications negotiated outside any formal court-sanctioned process. Likewise, parties may continue to request court-ordered mediation on any issue with consent the parties, but this Court will no longer entertain loss mitigation motions in Chapter 13 cases.[6]

The present application for compensation by Debtor's counsel is an example of the issues the loss mitigation program has created in this Court. It will be the last application for

---

[6] This Court will also no longer entertain loss mitigation motions in Chapter 7 cases. This decision does not modify, amend, or limit loss mitigation procedures for any other judge in this Court or the Court generally.

compensation this Court approves which seeks additional fees for loss mitigation absent extraordinary circumstances.

### Conclusion

The Court finds Counsel's attorney's fees reasonable under § 330. The Application is granted for the full amount requested. The Court also finds it appropriate to allow attorneys to opt into a presumptively reasonable fee in Chapter 13 cases. With respect to cases before this Court, the Court will no longer entertain motions for loss mitigation in Chapter 7 or 13. Formal procedures regarding the compensation of counsel for debtors in Chapter 13 cases will be released in the coming weeks.



**Dated: Central Islip, New York**
**February 28, 2022**

        **Robert E. Grossman**
        **United States Bankruptcy Judge**